UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA,         :

                                                      :        **SENTENCING MEMORANDUM**
        -v-
                                                     :        12 CR 166 (RRM)

Taleek Brooks
                Defendant.        :

------------------------------------------------------X

# TALEEK BROOKS' SENTENCING MEMORANDUM

Federal Defenders of New York
One Pierrepont Plaza
Brooklyn, New York 11201
Michael D. Weil, Of Counsel
Tel: (718) 407-7413

**Preliminary Statement**

Taleek Brooks committed a serious crime and deserves a serious punishment. That much was decided in this case by Congress, when it created a 15-year mandatory minimum for production of child pornography. For a middle-aged first-time offender with no criminal history – who has accepted responsibility for his offense by pleading guilty – such a sentence is severe by any measure. As Mr. Brooks will be required to register as a sex offender and can be placed on lifetime supervised release, no greater sentence is necessary to achieve the purposes of punishment outlined in 18 U.S.C. § 3553.

Anger and repulsion are not Section 3553 factors and should play no role in the defendant's sentence. Indeed as this Court is surely aware, a sizeable portion of child pornography defendants were victims of sexual abuse themselves as children. Mr. Brooks himself was one such victim. (PSR ¶ 70.) While the prior abuse in now way excuses his conduct, our visceral reaction to his crime should be tempered by awareness of its likely roots.

The defense asks not for special treatment, but only that Mr. Brooks' offense be treated like other serious crimes. While a victim has endured injury, the same is true in any number of other cases the Court sees, including violent robberies, human trafficking, and frauds. Drug and firearm offenses set off chain reactions of human destruction. A sentence of 15 years – for a first time offender who has pled guilty – is typically deemed more than sufficient in all cases save for murder and so it should be here. That Mr. Brooks' actions are harder to comprehend is not a reason to punish him more severely; his actions likely arise out of some personal trauma that is equally difficult to fathom.

The United States Sentencing Guidelines call for a sentence of at least 30 years. The

skewed, excessively punitive treatment of child pornography under the Guidelines is exemplified by the fact that in this case Mr. Brooks faces a higher recommended sentence for his offense of *distributing* child pornography (Count 8) than he does for *manufacturing* it (Count 7), even though in setting statutory penalties Congress understandably deemed production the far more serious offense, warranting a 15- as compared to 5-year mandatory minimum.  Compare 18 U.S.C. §§ 2251(e) and 2252(b)(1).   The Second Circuit has indicated the Guideline applicable to receiving and distributing child pornography, U.S.S.G. § 2G2.2, should be applied with great caution as it calls for maximum penalties in the most common cases.  United States v. Dorvee, 616 F.3d 174 (2d Cir. 2010).  As detailed in a recent report from the Sentencing Commission discussed below, variances from that Guideline are routine.  As Mr. Brooks' distribution offense was not commercial and involved a fairly typical file-sharing scenario, and because he never distributed the images he produced, insofar as Count 8 is concerned it is hard to distinguish him from the many defendants who receive sentences far below the Guidelines.  Thus, the deeply flawed distribution Guideline should carry little weight in his sentence.

      The Guideline for child pornography production, § 2G2.1, also calls for a very severe sentence, albeit less than 2G2.2.  Recently, in production cases as well, courts have begun to recognize that the Guidelines call for excessive sentences.  This is not to say Courts are being lenient nor that they should be or could be.  Rather, the Guidelines in these cases are so high that courts have found them to be excessive even in cases warranting severe punishment.

      Finally, Mr. Brooks is currently being prosecuted in New York State court for engaging in a course of illegal sexual conduct against this same victim over the same time period.  (See

PSR ¶ 64.)  The Court should thus limit its sentence to punishing Mr. Brooks for his child pornography offenses and leave to the co-equal state court whether additional punishment is needed based on the underlying sexual abuse.

In sum, given the fact that Mr. Brooks has pled guilty and expressed remorse; that the images he produced were not distributed; that he can be placed on lifetime supervision upon his release and will be required to register as a sex offender; and that he faces a second prosecution in the state for his abuse of the same victim over the same time period, the defense submits that the Court should sentence him to the mandatory minimum in this case of 15 years.

### Section 3553

Section 18 U.S.C. § 3553(a) requires a sentence that is "sufficient, but not greater than necessary" to satisfy specific sentencing goals, including just punishment, deterrence of future criminal conduct, protection of the public, correctional treatment, and the prevention of unwarranted sentencing disparities. See 18 U.S.C. §3553(a)(2).  Section 3553(a) further directs courts to consider the applicable Sentencing Guidelines, "the nature and circumstances of the offense," and "the history and characteristics" of the defendant." See 18 U.S.C. §3553(a)(1).

1. **The Nature and Circumstances of the Offense and History and Characteristics of the Offender**.

**(A) The Nature and Circumstances of the Offense**

The offense is a serious one involving a school aide making sexually explicit videos of a pre-teen child under his supervision and sharing unrelated child pornography over the Internet. The primary aggravating facts in this case are that the abuse took place over a period of time, and the defendant abused a position of trust.

3

In mitigation, the videos Mr. Brooks produced were never distributed. One of the primary harms the child pornography laws are meant to address is the re-victimization of children every time the videos are viewed; because the videos in this case were not distributed, that harm is absent. See Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110–358, Tit. I, § 102(3), 122 Stat. 4001, 4001 ("Child pornography is a permanent record of a child's abuse and the distribution of child pornography images revictimizes the child each time the image is viewed."); Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109–248, § 501(2)(D), 120 Stat. 587, 624 ("Every instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse"); United States v. Broxmeyer 699 F.3d 265, 303 (2d Cir. 2012) (Jacobs, dissenting) ("A statutory maximum is appropriate only for the worst offenders. Unfortunately, we have seen such defendants. They are people who force small children to engage in sexual and sadomasochistic acts, who photograph or video the scene, and who broadcast it to the world, leaving the children with the pain of the experience and the anguish of knowing that degenerates are gloating over their abuse and humiliation"); New York v. Ferber, 458 U.S. 747, (1982) ("The materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation").

In some sense, because the videos were not distributed, the most serious part of the crime in this case was not the production of child pornography but the sexual abuse of a minor – a crime which is typically prosecuted on the state level. As noted above, Mr. Brooks is currently under indictment in the state court for his abuse of the child in the videos. The top charge against him is a Class B felony, carrying up to 25 years in prison. See N.Y. Penal Law

§§ 130.75, 70.02.  If he is convicted the state court judge will have the option of imposing a sentence consecutive to whatever term your Honor imposes.  See N.Y. Penal Law § 70.25(4).

Also mitigating the crime is the fact that the videos do not involve rape or sodomy but instead primarily show the victim masturbating.  While this is no doubt abhorrent, to the degree the court is forced to make gradations at sentence, it is simply not as egregious as a case involving an adult actually penetrating a young child.  See U.S. v. Price  2012 WL 966971, 12 (C.D. Ill. 2012) (noting that photographs "did not depict violence, sadistic, or masochistic conduct, acts of penetration, or sexual conduct with another person" and that statutory maximum "should be reserved for the worst offenders who produce the most harmful child pornography.")

**(B) The History and Characteristics of the Offender.**

Aside from the conduct in this case, the defendant's history appears exemplary.  Mr. Brooks has no criminal record and has worked his whole adult life. (See PSR ¶¶ 67, 68.)  Up until his arrest, he lived in the same apartment for 21 years.  His mother, who has diabetes, lived with him but recently was forced to move as Mr. Brooks had been paying the rent.  (PSR ¶ 71.) [1]

Mr. Brooks worked in the school system for 15 years.  He always paid his taxes (PSR ¶ 90), and appears to have been financially responsible, never filing for bankruptcy or amassing large debts.

---

[1] Among the many collateral consequences of this case for Mr. Brooks is that he has effectively lost his family.  Relatives posted his bail and came to his court appearances at the outset of this case, but due to the publicity he and his family have apparently agreed to part ways. (PSR ¶¶ 67, 68.)  He wishes to spare his family any shame of being associated with him and asked that they not be contacted.

While the nature of the charges and fears about sexual predators in the school system might tempt one to believe that Mr. Brooks' entire work history was no more than a "cover" designed to provide him access to children for sexual misconduct, such a supposition would be entirely unwarranted and unfair. There is simply no evidence Mr. Brooks has ever harmed another child. Rather, based on his post-arrest statements, it appears Mr. Brooks began viewing child pornography seven years prior to his arrest in January 2012 – long after he had been employed at P.S. 243 – and that several years later he produced the images of the victim in this case. (PSR ¶ 10.) When highly publicized allegations of abuse at a school or church surface, typically multiple victims come forward, as occurred in scandals at Penn State and the New York private schools Poly Prep and Horace Mann. Here, notwithstanding significant publicity surrounding this case and an investigation by the FBI at the school where the defendant worked, no evidence of other abuse has been found.

**2. The Need for the Sentence Imposed to:**

**(A) Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment for the Offense.**

A sentence of 15 years reflects the seriousness of the crime, promotes respect for the law, and provides punishment. No one doubts such a punishment is severe for a first-time offender.

In this case, the defendant's acceptance of responsibility weighs against the need for any greater punishment. Charges involving child molestation frequently go to trial notwithstanding overwhelming evidence; many defendants cannot admit what they have done due to the shame associated with the crime and some pedophiles remain in denial by rationalizing their behavior

on the misguided grounds that a child was "sexually provocative" or that the experience had "educational value." See United States v. Kise, 369 F.3d 766, 773 (4th Cir. 2004) (citing the DSM-IV's discussion of pedophiles).

Thus, in cases involving child pornography production, courts have often cited a defendant's lack of remorse as one factor warranting a severe sentence. See United States v. Oehne, 698 F.3d 119 (2d Cir. 2012) (noting with approval district court's reliance on defendant's attempt to "downgrade" crime in upholding sentence); United States v. Broxmeyer, 699 F.3d 265, 295 (2d Cir. 2012) (citing defendant's blame of his victims rather than himself and general lack of remorse as aggravating factor warranting 30-year sentence); U.S. v. Curtis, 2013 WL 1196878, 6 (11th Cir. 2013) (upholding district court's 360-month sentence in part because defendant's "lack of remorse and blame towards the victim outweighed" the fact that he had only minor criminal history); United States v. Christie, 624 F.3d 558, 574 (3d Cir. 2010) (upholding sentence as reasonable in part because defendant expressed no remorse).

Taleek Brooks, by contrast, has accepted responsibility and the defense submits his acceptance should be weighed heavily in this case. A guilty plea is particularly important in these cases in that it both spares the victim the trauma of a trial and breaks the pattern of denial and rationalization that allows an abuser to engage in such wrongful conduct.

Mr. Brooks must also register as a sex offender, with the publication of that information to the community and his friends and neighbors. As several courts have recognized, collateral consequences of conviction, such as registration as a sex offender, are relevant to the "need" for the sentence imposed to reflect just punishment. See, e.g., United States v. Garate, 543 F.3d 1026, 1028 (8th Cir. 2008) (overruling its prior holding that it was inappropriate for the district

7

court to consider the lasting effects of being required to register as a sex offender under Section 3553); United States v. Pauley, 511 F.3d 468, 474-75 (4th Cir. 2007) (affirming the district court's finding that the defendant "warranted a lower sentence because he lost his teaching certificate and his state pension as a result of his conduct," in child pornography case because "[c]onsideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect the need for just punishment," and "adequate deterrence").

Whatever his prison term, following his sentence Mr. Brooks will have gone from being an apparently well-liked member of a school community of teachers, students and parents to a registered sex offender and social pariah. Surely this is part of his punishment and lessens any need for additional incarceration solely to reflect that sentencing goal.

**(B) Afford Adequate Deterrence to Criminal Conduct.**

A sentence of 15 years is widely viewed as severe and will provide general deterrence to criminal conduct. Normally sentences of such length are imposed only on repeat offenders: 15 years is the statutory minimum under 18 U.S.C. § 924(e) for a felon in possession of a firearm following *three* prior violent or serious drug felonies. Surely it will provide sufficient specific deterrence for a defendant who has never previously set foot in jail.

**(C) Protect the Public from Further Crimes of the Defendant.**

Mr. Brooks' history and characteristics make him a very low risk to re-offend. According to the Sentencing Commission, recidivism rates in general (defined to include technical supervised release violations) "decline relatively consistently as age increases," from 35.5% for offenders under age 21, down to 12.7% for offenders age 41 to 50 at the time of

sentence. See U.S. Sentencing Commission, Measuring Recidivism (May 2004) at 12 & Ex 9.[2] R.K. Hanson, a psychologist who developed one of the most widely used testing instruments for sex offenders, has found that sex offender recidivism declines significantly with age, and only a very small percentage of sex offenders recidivate after age 60.  See R.K. Hanson, Recidivism and Age: Follow-up Data from 4,673 Sexual Offenders, 17 J. Interpers. Violence 1046, 1054 (2002);   Mr. Brooks will be near 60 when released even if he receives the statutory minimum.

Moreover, Mr. Brooks will be required to undergo treatment as a condition of his supervised release.   In a recent report to Congress concerning child pornography, the Sentencing Commission reported that "appropriate 'treatment interventions . . .  are associated with lower rates of recidivism—some of them very significant.'" U.S. Sentencing Commission Report to Congress: Child Pornography Offenses (December 2012) at  278 & n. 30.[3]  The Probation Department for the Eastern District of New York reported to Judge Weinstein in a recent case that – even though many of its child pornography supervisees had prior sexual contact with minors – "Much to the credit of our supervising officers and treatment providers, we have had only 1 known offender convicted of  [a] child pornography offense who committed a new sexual contact offense while under the supervision of this department, which we are aware of."  (See Memorandum to the Honorable Jack B. Weinstein from Eileen Kelly, Exhibit E to Memorandum and Order (Doc. # 140-3), in United States v. C.R., 09-CR-155 (JBW) (annexed hereto as Ex. A.)  The demonstrated effectiveness of the Probation Department at

---

[2]Available at **www.ussc.gov.**

[3] Available at **www.ussc.gov.**

supervising sex offenders lessens the need for a lengthy sentence for incapacitation alone.

(D) **To Provide the Defendant with Needed Training and Treatment**.

Mr. Brooks is a long-employed high school graduate who does not appear to have any significant need for treatment other than sex offender treatment. As detailed in the recommendation section of the PSR, the BOP's sex offender treatment program lasts 18 months and the minimal custodial sentence to ensure placement in the program is 27 months.

The remainder of the defendant's treatment will take place while he is on supervised release. As detailed in the memo submitted by the Probation Department in C.R., sex offenders undergo intensive treatment including weekly group and individual sessions as well as polygraphs. Given the brevity of the BOP's program, whatever sentence Mr. Brooks receives above 180 months will in fact lessen the amount of treatment he receives.

**4, 5. The Sentencing Guidelines and any Relevant Policy Statement.**

While this Court must still correctly calculate the guideline range, Gall v. United States, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, *id.* at 51, but must treat it as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). Kimbrough v United States, 552 U.S. 85, 90 (2007). The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." Id. at 101; Pepper v. United States, 131 S. Ct. 1229, 1242-43 (2011).

**§ 2G2.2: The Distribution Guideline**

In this case, Mr. Brooks' conviction for distributing child pornography – which he did over a social network and not in any true commercial context – carries a higher adjusted offense

level – 45 prior to acceptance of responsibility – than his production offense because he faces enhancements due to the number and nature of the images; his use of a computer; and the fact that he was seeking to trade the images. The Guidelines place his offense level at a point that calls for a sentence well beyond the statutory maximum for his distribution crime.

  The Second Circuit has cautioned district courts to apply § 2G2.2 with "great caution" because the guideline is "fundamentally different from most and ... can lead to unreasonable sentences that are inconsistent with what § 3553 requires." United States v. Dorvee, 616 F.3d 174, 184 (2d Cir. 2010). The circuit pointed out that Sentencing Guidelines are typically developed by the Sentencing Commission using an empirical approach, whereas § 2G2.2 has been amended at Congressional direction several times, each time recommending harsher penalties. "The § 2G2.2 sentencing enhancements cobbled together through this process routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases." Id. The circuit noted that many of the enhancements apply in nearly all cases. "Of all sentences under § 2G2.2 in 2009, 94.8% involved an image of a prepubescent minor (qualifying for a two-level increase pursuant to § 2G2.2(b)(2)), 97.2% involved a computer (qualifying for a two-level increase pursuant to § 2G2.2(b)(6)), 73.4% involved an image depicting sadistic or masochistic conduct or other forms of violence (qualifying for a four-level enhancement pursuant to § 2G2.2(b)(4)), and 63.1% involved 600 or more images (qualifying for a five-level enhancement pursuant to § 2G2.2(b)(7)(D))." Id. The PSR assigns Mr. Brooks all of these enhancements. As the circuit noted in Dorvee:

> "[A]dherence to the Guidelines results in virtually no distinction
> between the sentences for defendants like Dorvee, and the sentences
> for the most dangerous offenders who, for example, distribute child

>pornography for pecuniary gain and who fall in higher criminal history categories. This result is fundamentally incompatible with § 3553(a)." Id.

In response to Dorvee and similar holdings in other circuits, the Sentencing Commission recently released a report to Congress on the child pornography guidelines. U.S. Sentencing Commission Report to Congress: Child Pornography Offenses (December 2012) ("Child Pornography Report"). The Commission explained that it compiled the report in large part due to the increasing rate of below-guideline sentences for offenders sentenced under U.S.S.G. § 2G2.2, pursuant to its statutory duty to "consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions," and because "as a result of recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." *Id.* at ii, 323.

The Commission explained that because the enhancements for computer use and type and volume of images "now apply to most offenders," the guideline "fail[s] to differentiate among offenders in terms of their culpability." *Id.* at iii, xi, 209, 323. Because "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," *id.* at xi, the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors," *id.* at 323.

There is nothing particularly aggravating about Mr. Brooks' collecting behavior; as noted above it was divorced entirely from his crime of production. Based on Dorvee and the

12

Commission's recent report, the distribution guideline should play a very minor role in the Court's balance of sentencing factors.

### 2G2.1: Production of Child Pornography

Mr. Brooks' offense level for his production offense is currently in dispute. Based on the addendum to the PSR, the production charge carries an adjusted offense level of 42, but the defense submits the enhancement for the victim being vulnerable under U.S.S.G. § 3A1.1(b)(1) should not apply. (See Addendum to PSR). The adjusted offense level for Count 7 – prior to acceptance of responsibility – should be level 40.

Although it has received much less notice, § 2G2.1, like the distribution guideline, was not the product of empirical research by the Sentencing Commission. Most significantly, in the PROTECT Act of 2003 Congress increased the mandatory minimum in production cases from 10 to 15 years; in response, the Commission enacted Amendment 664 to 2G2.1, which increased the base offense level from 27 to 32 and added enhancements it believed would apply in "almost all production cases ... [to] ensure that the 15 years mandatory minimum (180) months will be met by the Chapter Two calculations in almost every case." U.S. Sentencing Commission, Guidelines Manual: Supplement to Appendix C, Amendment 664.

This rationale – pegging the guideline to a mandatory minimum as opposed to the sentencing experience and wisdom of the Courts – is of course exactly the same as that which was used in constructing the crack guidelines. See Kimbrough v United States, 552 U.S. at 109 (because crack Guidelines pegged to mandatory minimum, they did not "exemplify Commission's exercise of its characteristic institutional role"). In such a case it is less likely that the guideline "reflect[s] a rough approximation of sentences that might achieve § 3553(a)'s

13

objectives." Kimbrough, 552 U.S. at 109-10. Just as the Second Circuit found in Dorvee that Kimbrough's holding that "it was not an abuse of discretion" for a district court to disagree with the crack guidelines based on the Commission's failure to exercise of its "characteristic institutional role" applied with "full force" to § 2G2.2, Dorvee, 616 F.3d at 188, so too should this Court find this rationale applies to 2G2.1. In an effort to ensure that it kept pace with the mandatory minimum set by Congress, the production Guideline provides for inflated sentences across the board.

Courts have begun to recognize that § 2G2.1 suffers from some of the same problems as 2G2.2. See U.S. v. Price, 2012 WL 966971 at 11 (C.D.Ill.) ("2G2.1 presents some of the same problems presented by § 2G2.2. Section 2G2.1 is similarly not the product of empirical study by the Sentencing Commission."); United States v. Jacob, 631 F. Supp.2d 1099 (N.D. Iowa 2009) (same). Thus, the defense submits that 2G2.1 – which in this case calls for a sentence near the statutory maximum for an offender with no criminal history, who did not distribute the images he produced and who has accepted responsibility by pleading guilty – should be entitled to little weight as well.

**6. The Need to Avoid Unwarranted Sentencing Disparities**.

While, a guideline sentence will typically address unwarranted disparities, here it would not. The Commission issued its Child Pornography Report because in recent years a majority of sentences in distribution cases fall below the Guidelines, meaning in such cases a Guidelines sentence would promote disparity – exactly the opposite of what Congress intended.

The same is increasingly true in production cases. The effect of the amendment of 2G2.1 – again based not on sentencing practices or national experience but simply to keep pace

14

with Congress – had until recently been an enormous ratcheting up of sentences in distribution cases. The average sentence has increased from 63 months in 1992 to 153 months in 2004 to a high of 283 months in 2009. U.S. Sentencing Commission, Child Pornography Report at 253. Since Gall and Kimbrough, it appears that courts are beginning to analyze whether such sentences are excessive even in production cases. Average sentences declined in 2010 to 267 months in production cases. Id. The rate of non-5K1.1 below guidelines sentences in production cases increased to 38 percent in fiscal year 2011. Id. at 254. Given the revulsion most express toward those who produce child pornography, this departure rate alone is a testament to just how excessively severe the Guideline must be.

Thus, as with the distribution guideline there appears to be a growing chorus suggesting the Guidelines for production are perhaps excessive and entitled to less weight than most both to ensure sentences meet the purposes of Section 3553 and to avoid unwarranted disparities.

A guidelines sentence for Mr. Brooks' production offense would promote disparity. Statutory maximums should be reserved for the worst of the worst. See United States v. Broxmeyer 699 F.3d 265, 303 (2d Cir. 2012) (Jacobs, dissenting). An analysis of the Commission's data in this area shows that Mr. Brooks is nowhere near that defendant. For example, the Commission has noted that a full one-third of production defendants either distribute the pornography they produce – re-victimizing their victims in perpetuity – or communicate with other offenders about child sexual exploitation. Child Pornography Report at 264. More than a third of the cases involve multiple victims. Id at 266. Twenty-five percent of the cases involve children five years old or younger. Id. at 265. None of these aggravating factors are present here and yet the Guidelines call for a sentence well beyond the average term.

15

## **CONCLUSION**

For the foregoing reasons, the Court should impose a sentence of 15 years.


Dated: July 3, 2013
      Brooklyn, New York

                                            Michael D. Weil
                                            Federal Defenders of New York
                                            One Pierrepont Plaza
                                            Brooklyn, NY 11201
                                            (718) 407 7413